[No. 17490.   Department One.   November 25, 1922.]

A. A. HOOPMAN, *as Administrator etc., Appellant,* v.
THE CITY OF SEATTLE, *Respondent.*[1]

STREET RAILROADS (20, 28) — COLLISION WITH VEHICLE — NEGLI-
GENCE—CONTRIBUTORY NEGLIGENCE—EVIDENCE—SUFFICIENCY. There is
no sufficient evidence of the negligence of a motorman, through ex-
ceeding the speed limit, where his positive evidence to the contrary
and the distance in which he stopped leaves the matter of excess
speed a matter of mere speculation and guess.

SAME   (28)—NEGLIGENCE—EVIDENCE—PRESUMPTIONS — RES IPSA
LOQUITUR. The doctrine of *res ipsa loquitur* has no application to
the collision of an automobile and a street car where the motorman
did not see the automobile until almost upon it and could do nothing
to avoid the collision.

Appeal from a judgment of the superior court for
King county, Griffiths, J., entered May 19, 1922, upon
granting a nonsuit, dismissing an action for wrongful
death. Affirmed.

*Herr, Bayley & Croson,* for appellant.

*Walter F. Meier* and *George A. Meagher,* for re-
spondent.

HOLCOMB, J.—This action was brought by appel-
lent, as administrator of the estate of his wife, Louise
M. Hoopman, to recover damages for the alleged
wrongful death of his wife, under the provisions of
§ 183, Rem. Comp. Stat., for the benefit of himself and
his minor child of the age of eighteen years.

The unfortunate accident  occurred at about 9:30
o'clock on the evening of May 15, 1921. Doctor and
Mrs. Hoopman, with two guests, were returning from
church to their home on Queen Anne Hill, Seattle, in
their four-passenger Franklin automobile. Doctor
Hoopman was driving and his wife was seated beside

[1]Reported in 210 Pac. 783.

him on the right of the front seat, the guests being seated in the rear seat of the automobile. He drove in a northerly direction until he reached the junction of Wall and Fifth streets, and then turned west on Wall street on his way to First avenue. As he approached the intersection of Third avenue and Wall street, he first looked to the south, saw no street car approaching from that direction, then sounded his horn, put his car in intermediate and proceeded at a speed of about ten to fifteen miles per hour to cross the street, but before doing so saw a street car approaching on the south-bound track as it was crossing the street a block away to the north, a distance of about 200 feet. It was a wet and rainy night. He put his car in intermediate so that he might have better control of its operation. The curtains were in use on the automobile, but were loose and flapping in front.

After he first saw the street car coming from the north, he did not see it again until the front wheels of the automobile were on the east rails of the track on which the street car was running, and the street car was almost upon the automobile. Appellant did not hear any gong ring on the street car, but he was hard of hearing. When he found the street car almost upon him, he turned his automobile to the south in order to try to avoid a broadside collision. The front wheels of the automobile had just passed over the west track when it was struck by the oncoming street car. The collision resulted in injury to the passengers, and the death of Mrs. Hoopman three days later. The street car ran its fender under the right wheel and crashed into the side of the automobile with such force as to break off the seats on the inside, lifting the hind wheels of the automobile off the ground and rolling it along with the street car for three-fourths of a block before being brought to a stop. It carried the auto-

mobile in front of it in this way on a slight up-grade, and after being put in reverse.

The motorman operating the car was called by appellants and testified that, as the street car approached Wall street, it was being operated at approximately eighteen miles per hour. He did not see the automobile of appellant until the street car was half way across Wall street, which appellant was crossing. Upon seeing the automobile, he immediately reversed the power of the street car. When the motor was reversed, the wheels of the street car began to move backwards, but the "jack" blew out, the wheels became locked, and the street car slid upon the wet rails a distance of approximately 125 to 140 feet before coming to a complete stop. A good stop could be made, considering the weight of that street car and the wet rails, and other conditions existing at the time, in a distance of 150 to 175 feet. The motorman testified that he tapped his bell with his foot when he was about the middle of the block, but that he did not ring it hard, or in such a manner as would warn anyone approaching the crossing. The matter of the ringing of the gong is immaterial, however, for the reason that appellant testified that he saw the street car, as he said, when it was a distance of about 200 feet from him. The street car had made a complete stop at Cedar street, two blocks north of the place of the accident, and then proceeded south, there being a slight up-grade between Lyon and Wall streets.

Upon motion of respondent, the trial court took the case from the jury and directed a dismissal of the action.

The theory of appellant is that respondent was negligent in operating its street car at an excessive rate of speed, and that the excessive speed is establish-

ed by the distance the street car traveled, pushing the automobile, after the collision.

In view of the weight of the street car and the wetness of the track, and other elements besides that of speed which might enter into and affect the stopping of the car, a finding by the jury that the speed of the street car exceeded the lawful rate of twenty miles per hour would be mere speculation and guess (*Herrett v. Puget Sound Traction, L. & P. Co.*, 103 Wash. 101, 173 Pac. 1024); besides which there is the positive and uncontradicted testimony of the motorman, testifying for plaintiff, that the speed at which the street car approached Wall street was approximately eighteen miles per hour.

Under the circumstances, it being rainy and the curtains of appellant's automobile being in use but flapping, and appellant being very deaf, he must have misjudged the distance of the street car from him when he looked to the north and saw it. If he were driving, as testified, at the rate of ten to fifteen miles per hour, no other conclusion can be reached. The motorman did not see his automobile until the car was almost upon it, and could have done nothing to avoid the collision.

Nor can it be a case falling within the doctrine of *res ipsa loquitur,* as suggested by appellant. The principle of *res ipsa loquitur,* as applied to negligence cases, is used to give expression to the idea that when the accident is shown to be of such a character as, in the light of logical experience, is inexplicable except as the result of negligence, then negligence will be presumed. *De Yoe v. Seattle Elec. Co.*, 53 Wash. 588, 102 Pac. 446, 104 Pac. 647, 1133. There are no such circumstances shown in this case.

Regrettable as the accident was, we are of the

opinion that the trial court was clearly right, and that appellant cannot recover.

Judgment affirmed.

PARKER, C. J., BRIDGES, MACKINTOSH, and MITCHELL, JJ., concur.