[No. 17494.  Department One.  January 19, 1923.]

THE STATE OF WASHINGTON, *Respondent,* v. B. E. FLUHART *et al., Appellants.*[1]

FALSE PRETENSES (11)—INFORMATION—OBTAINING MONEY. An information for obtaining money under false pretenses is sufficient where it charges that the prosecuting witnesses were induced to pay $500 on stock subscriptions through false representations that accused were the owners of a sawmill, in operation, free and clear of all encumbrances.

APPEAL (274)—RECORD—EXHIBITS.     Error cannot be assigned upon the exclusion of an exhibit which is not in the record on appeal because it could not be found.

APPEAL (386)—REVIEW—ESTOPPEL TO ALLEGE ERROR—ACQUIESCENCE. Error cannot be assigned upon the admission of evidence of an accounting, where appellants voluntarily offered and furnished all the documents relating thereto in aid of the attempt to show the accounting.

WITNESSES (77)—CROSS-EXAMINATION—TRUTH OF DIRECT TESTIMONY. Upon a prosecution for obtaining money on false pretenses, in which witnesses testified to similar false pretenses made to them, whereby they were induced to part with their money without knowledge of certain facts, recited in a written contract, it is prejudicial error to cut off cross-examination tending to show that they had notice of recitals in the contract, which was referred to in an instrument which they had signed.

FALSE PRETENSES (15)—EVIDENCE—MATTERS OF DEFENSE.   In a prosecution for obtaining money under false pretenses, the accused is entitled to show that interlineations and changes in a written contract were made by consent of the prosecuting witness subsequent to the time he paid in his money.

Appeal from a judgment of the superior court for King county, Frater, J., entered May 22, 1922, upon a trial and conviction of larceny.  Reversed.

*P. C. Kibbe,* for appellants.

*Malcolm Douglas* and *Bert C. Ross,* for respondent.

[1]Reported in 212 Pac. 245.

MITCHELL, J.—The appellants, defendants, were convicted of the crime of grand larceny by obtaining money by false pretenses, and have appealed.

The information charges that, on or about April 5, 1921, in King county, Washington, the appellants fraudulently and feloniously represented to one Gus Anderson that they were the owners of a sawmill at Offut Lake, in Thurston county, free from incumbrances; that it was in operation by them at that time and was making money; that they were engaged in forming a new corporation to purchase the mill and additional equipment; that Gus Anderson, believing the false pretenses and representations and relying thereon, was induced to, and did, deliver to them $500 in money, to be used in the enterprise and in payment of the purchase price of stock in the proposed corporation; that the pretenses and representations of appellants were false; that they, or either of them, were not the owners of such mill; that the sawmill referred to was not free from liens and incumbrances; that they were not in need of additional equipment with which to operate the mill; and that the property was not then being operated as a going concern by the appellants, or either of them.

It appears that appellants owned all the stock of the Lake Lumber Company, a corporation, that for some time had owned and operated the sawmill; that its assets were valued at some $20,000, against which there were liabilities of approximately $4,000, and that during the year 1920, for some reason not made clear, it was placed in the hands of a receiver, which continued until after the date of the transaction complained of in this action. It is claimed by the prosecution, and its proof tended to show, that the appellants, residing in Seattle in February, March and April,

1921, by newspaper advertisements, interested Frank M.
O'Conner, M. C. Winn, S. C. Briscoe, J. W. Hannon,
Gus Anderson, the complaining witness, F. Melline,
C. R. Morrison and C. W. Campbell in the proposed
corporation to take over and operate the mill. A
number of those prospective investors, including the
complaining witness, were taken to the property to
examine it, and from time to time between March 1,
1921, and April 15, 1921, each of them subscribed in
writing to the capital stock of the proposed corpora-
tion. Gus Anderson subscribed $1,000, and on April
5 paid $500 thereon to the appellants.

Two important written instruments are involved,
one is called a "subscription agreement," the other is
called "agreement for the purchase of property and
the issuance of full paid stock therefor." The one
provided somewhat in detail for the formation of a
corporation into which appellants were to put the mill
or their rights therein, while the prosecuting witness
and his associates were to put in money for the opera-
tion and expansion of the business. It was at the end
of this instrument that the parties signed and entered
their respective subscriptions. The other instrument
contains recitals to the effect that the appellants, as
vendors, are in a position to obtain, on favorable
terms, the sawmill in question with the logging equip-
ment, temporarily in the hands of a receiver pending
the adjustment of certain claims against the property,
together with other recitals not necessary to be men-
tioned here.

The testimony of the complaining witness and his
associates showed that appellants represented that
they owned the sawmill and logging outfit entirely
free and clear, that they were engaged in running it
and needed additional money to expand the business

and increase the logging equipment. It further showed that, in all their dealings with the appellants, including the subscriptions made by them and payments thereon, they were unaware of any proposed written instrument other than the subscription agreement, and did not know that appellants did not have title to, and could not deliver possession of, the property until some time after they had parted with their money.

On the contrary, proof on behalf of the defense showed that a full, fair and correct disclosure was made to the complaining witness and his associates at all times of the exact rights and interest of the appellants in and to the property, and that in all their dealings both of the written instruments referred to were attached together and used and considered by all of the parties to the transaction.

Concerning the assignments of error, we are satisfied the information states facts sufficient to constitute a crime and that the motion for a directed verdict of acquittal was properly denied. Complaint is made that the court erroneously refused to allow in evidence what purported to be minutes of a meeting of all of the parties looking to the formation of a new corporation, which meeting was held at or immediately prior to the payment made by the complaining witness. But the so-called minutes are not in the record and it is stated by appellants in their abstract that they cannot now be found, so that we are not in a position to say there was any error in excluding them.

Another assignment of error is that testimony on behalf of the state was improperly allowed showing a so-called accounting by appellants to the other parties some months after the complaining witness had paid his money and it had been discovered that the appellants did not have clear title to the property. The

record, however, shows that, in the course of this particular proof, the appellants themselves, through their then counsel, voluntarily offered and furnished all the documents and papers they had relating thereto in aid of the state's attempt to show the accounting in its details.

There is a more important assignment of error. It relates to an undue restriction upon the cross-examination of two of the state's witnesses. Anderson had testified that, although he knew the contents of the subscription agreement at the time he signed it and parted with his money, he, nevertheless, knew nothing of the other instrument or that the property was in the hands of a receiver until some time afterwards. Following Anderson, two of his associates were examined for the state, one of whom subscribed and contributed to the new corporation prior to, and the other subsequent to, the time of the subscription and payment made by Anderson.

One of these witnesses, J. W. Hannon, testified that he did not know the mill was in the hands of a receiver until after he had paid in his money. On cross-examination, he said that the agreement to purchase was not attached to the subscription agreement at the time he read and signed the latter, and that if it had been he would not have signed at all because the agreement to purchase contained recitals showing that the property was in the hands of a receiver. Continuing the cross-examination, his attention was called to a portion of the subscription agreement he had signed, as follows:

"As soon as organization shall have been completed · the trustees at their first meeting shall receive a report from the incorporators and shall execute a *purchase agreement in the form as attached hereto,* and immediately take possession and commence operations."

He was asked, "What did you suppose the paragraph referred to?" The court sustained an objection by the prosecution to the question on the ground that it was improper cross-examination and called for the witness' construction of the written instrument. Likewise the cross-examination of the state's witness W. C. Winn on the same matter was refused. The purpose of the state in having these witnesses testify they had no knowledge that the mill was in the hands of a receiver at the dates of their respective subscriptions and payments was to show intent on the part of the appellants at the time it was claimed they made similar representations to the complaining witness, Gus Anderson. It is so argued on behalf of the prosecution, following the cases of *State v. Anderson,* 107 Wash. 336, 181 Pac. 696, 185 Pac. 624, and *State v. Austin,* 121 Wash. 108, 207 Pac. 954, in which latter case it was said:

"Evidence was received of the making of similar representations by the appellant to several other purchasers of stock and this is claimed to be erroneous. In *State v. Anderson, supra,* this court has settled the law in this jurisdiction that similar representations are admissible in a case of this kind for the purpose of showing intent."

But surely, if the state had the right to show such representations for that purpose, the defense was equally at liberty, upon cross-examination of the witness, to attempt to break down the effect of that testimony and overcome the purpose, the achievement of which is the very purpose and province of cross-examination. But relying on *Carroll v. Centralia Water Co.,* 5 Wash. 613, 32 Pac. 609, 33 Pac. 431, and *Reynolds v. Pacific Car Co.,* 75 Wash. 1, 134 Pac. 512, the state contends that ". . . the extent of cross-examination rests in the discretion of the trial judge."

That rule, however, is not applicable here, where on cross-examination nothing whatever was allowed upon this important point, emphatically suggested by the testimony in chief. Other questions on the cross-examination of W. C. Winn touching his knowledge or information that the mill was in the hands of a receiver at the date of his subscription were improperly not allowed to be answered. The questions proposed related to a matter vital to the interests of the defendants. Clearly they were proper, and the refusal of the court to allow them to be answered was prejudicial error.

Since the case is to go back for another trial, one other matter may be mentioned. The so-called purchase agreement, as it appeared at the time of the trial, contained a number of interlineations and changes over its original composition, not with reference, however, to the recitals that the mill was in the hands of a receiver, the point so vital here. The appellants were not allowed to show that the alterations and changes were made by consent of the parties, subsequent to the date Anderson paid in his money, at a meeting when all the parties, including Anderson, were present. Since it appears the instrument had been kept by the appellants, we think they should be allowed to explain the fact that changes were made and the extent to which they were made under those circumstances, and in the presence of, and with the consent or knowledge of, the complaining witness.

Other assignments of error of minor importance are not considered sufficient to merit discussion.

For the reasons given the judgment is reversed with directions to grant a new trial.

PARKER, HOLCOMB, BRIDGES, and MACKINTOSH, JJ., concur.