[No. 29507.    Department Two.    March 16, 1945.]

HARRY WEBB et al., Appellants, v. THE CITY OF SEATTLE, Respondent.[1]

[1]Reported in 157 P. (2d) 312.

*Little, Leader, LeSourd & Palmer* and *Medley & Haugland,* for appellants.

*A. C. Van Soelen* and *Arthur Schramm,* for respondent.

SIMPSON, J.—Plaintiffs instituted action in this case to recover damages for the loss of services and burial expenses of their son, Harry Webb, a minor, age fourteen years, who was killed by a school trolley bus.

In their complaint plaintiffs alleged that the accident which caused the death of their son occurred January 15, 1943, on west Myrtle street near California avenue; that on the day mentioned a city bus, operated by the city of Seattle for the purpose of picking up and transporting school children, was driven south on California avenue and then, without stopping at the bus zone on California avenue, turned west onto Myrtle street and stopped with the bus away from the curb and out onto the street to permit the children to board. It was further alleged that on previous occasions the bus failed to stop at the bus zone to take on school children congregated there for transportation to school and drove beyond the zone, around the corner onto Myrtle street, and permitted the children to board the bus while it was standing out in the street; that the previous

conduct of the bus driver, in failing to stop in the bus zone and sometimes permitting the children to board the bus in Myrtle street, lured and enticed the children to run alongside and follow the bus in anticipation of boarding it as they had done on previous occasions; that on the morning of January 15, when the driver of the bus failed to stop at the zone and continued on onto Myrtle street, the group of children commenced to run alongside and follow the bus; that the driver operated the bus in such a careless, negligent, and reckless manner that he ran upon the plaintiffs' minor son, knocked him to the ground where he was held under the right front wheel of the bus and sustained injuries of which he died; that the wheel rested on the body of Harry Webb for approximately one-half hour, and that had it been promptly removed the boy would not have died.

The charges of negligence are: (1) In failing to stop at the curb in the bus zone and in loading and discharging passengers in Myrtle street; (2) enticing and luring the children on former occasions to run after and follow the bus; (3) failing to keep a proper lookout for the children, including the plaintiffs' minor son, when the bus driver knew, or in the exercise of reasonable care and caution should have known, that the group of children were in a place of danger; (4) stopping the bus in the center of Myrtle street; (5) failing to furnish the children a safe place from which to enter the bus; (6) permitting the bus to remain on top of plaintiffs' minor child for a period of approximately one-half hour; (7) that the bus was defectively equipped in that its brakes were inadequate and in that its reversing equipment was inadequate and ineffective.

Defendant filed its answer, denying all of the allegations of negligence contained in the complaint, and by way of an affirmative defense alleged that the accident was caused by the carelessness and negligence of Harry Webb. A reply put in issue the charge of contributory negligence.

The cause, tried to a jury, resulted in a judgment for defendant. A motion for judgment notwithstanding the verdict or in the alternative for a new trial was presented

and denied. Judgment was thereafter entered upon the verdict. Plaintiffs have appealed.

Their assignments of error are: (1) In taking from the jury the charge of negligence of failing to stop at the established bus zone on California avenue; (2) in giving an instruction on unavoidable accident; (3) in permitting the introduction into evidence of defendant's exhibits 7 and 8; (4) in denying appellants' application to amend their complaint so as to conform to statements contained in exhibits 7 and 8; (5) in denying appellants' motion for a new trial and entering judgment on the verdict.

The questions here presented may be most accurately stated, following a general outline of the facts which are undisputed in the main. California avenue is a paved thoroughfare, forty-eight feet in width, extending in a northerly and southerly direction. The intersecting street, Myrtle street, extends east and west and is fifty-two feet wide, having a paved strip in the center of approximately twenty-six feet. Concrete walks are on each side of the street and avenue. On the west side of California avenue, a few feet north of Myrtle street, there is a "bus loading zone." The zone is indicated by a painted strip about thirty feet in length on the street curb.

On the morning of the accident, some twenty or thirty school children had gathered on the corner of California avenue and Myrtle street, awaiting the arrival of the school bus. The bus came up to the bus zone as though it would stop, then turned out onto California avenue and commenced to make the turn onto Myrtle street. As it turned out from the loading zone, the children followed it. A number ran alongside, quite close to the front end. During this period of time, Harry Webb, who was running close to the front rank of the children, either fell under the right front wheel of the bus or the bus ran onto him. The wheel ran part way onto his chest before the bus was stopped. Immediately after the driver stopped the bus he alighted and sought some way of backing the bus so that the front wheel would not rest upon the boy. He explained that he could not reverse the bus because there would be an in-

stant before the reverse would take effect when the bus would roll forward, and he was afraid that if he attempted to reverse the bus would run entirely over Harry Webb. Attempts were made to push the bus backward, but they were unsuccessful. Finally, after the elapse of a considerable period, the bus was backed and the boy taken away. He died the day he was injured.

Appellant claims error on the part of the trial court in the giving of instruction No. 8, which reads:

"Plaintiffs have alleged as one of the acts of negligence on the part of the operator of the defendant's bus that said operator was negligent in failing to stop at the curb in said bus zone at a place of safety provided by the City of Seattle for that purpose. You are instructed that it is not negligence to fail to stop at the curb in a bus zone and you will therefore disregard such allegation of negligence."

In a study of this particular part of the case, we must view the entire situation as it appeared on the morning the boy met his death and, also, take into consideration a habit or course of action brought about and followed by the operators of the city buses. The bus drivers sometimes stopped the conveyances at the bus zone to take on school passengers and at other times moved on into Myrtle street, as was done on January 15th. These actions brought about a habit among the children of running with and following the bus as it turned into Myrtle street. The habit was dangerous to the children who rode the bus to school.

We do not conclude that it was negligence *per se* for bus drivers to drive past the zone with the intention of loading passengers on Myrtle street, but we do hold that all of the facts relative to the bus zone and the failure to stop there were for the consideration of the jury. The jury could well have found from the evidence that the city, through its employees, had in effect brought into being a dangerous situation which was alluring and attractive to the children who used the bus. The alleged negligence in failing to stop at the bus zone should have been presented to the jury in connection with the evidence relating to

the habit of sometimes stopping at the bus zone and of sometimes going around into Myrtle street.

In this connection, it must be borne in mind that those who convey children to and from school must exercise toward them the highest degree of care consistent with the practical operation of the conveyance. This duty obtains during the time the school passengers are being collected. *Phillips v. Hardgrove,* 161 Wash. 121, 296 Pac. 559; *Leach v. School District No. 322,* 197 Wash. 384, 85 P. (2d) 666.

The next assignment of error related to the giving of instruction No. 11, which reads:

"You are instructed that if you find from a fair preponderance of the evidence that the death of the deceased was the result of an accident for which you believe neither the deceased nor the defendant was to blame there can be no recovery and your verdict should be for the defendant, The City of Seattle."

The question of whether an instruction such as above set out should be given depends upon the evidence presented during the trial. *Jackson v. Seattle,* 15 Wn. (2d) 505, 131 P. (2d) 172; *Brewer v. Berner,* 15 Wn. (2d) 644, 131 P. (2d) 940.

In the last case cited, the rule was laid down in the following language:

"We hold to the view and are of the opinion that an instruction on unavoidable accident is only authorized when the evidence shows or justifies an inference that an unavoidable accident has occurred as that term has been defined. In other words, facts must be present in the case on the issue of unavoidable accident, and unless they are so present it is reversible error to give an instruction on that question."

In the instant case, the evidence shows that the children rushed into the street alongside the bus and ran at its side for a short distance. The jury could have found that the victim of the accident fell under the bus wheel or was pushed there by his schoolmates in their hurry to board the bus. We conclude that there was no error in giving the instruction on unavoidable accident.

The next assignment of error has to do with the introduction into evidence of exhibits 7 and 8. Exhibit 7 was a written report made to the city by George Sprague, a witness called by the appellants. The exhibit was offered and admitted in cross-examination for the purpose of impeaching the testimony of the witness relative to the time the bus wheel rested on Harry Webb. That report reads as follows:

"1. Did you see the accident? Yes. 2. Where did it occur? At California Ave. and W. Myrtle. 3. What day and hour did it occur? Jan. 15 at 8:30. 4. Where were you when it occurred? If on the coach, what part of coach? 5. If on the street, how near place of accident? 4 feet away from boy. 6. Was coach standing or moving at time of accident? Moving. If moving, about how fast? 5 miles. 7. Were the horns sounded at the time? No. Coach? √ Vehicle? 8. Were any signals given? No. Coach? √ Vehicle? 9. Were vehicles lighted? Coach? Vehicle? 10. Was the person or vehicle moving at time of accident? Yes. If moving, how fast? troting. 11. How far was object from coach when first seen in a position of danger? At side of coach. 12. How far, if at all, did coach go after accident? it stopped on top of him. 13. What was the extent of injury or damage? died shortly after. 14. Tell in your own way how the accident happened. The bus was coming around the corner and all of us started running beside the bus so we would be first ones on the bus. The boy was hanging on the front door of the bus. The wheel turned out and he tripped and went under the wheel. We yelled and he stopped on top of him. He was unable to get the bus off of him for fifteen minutes. Two cars pushed in front and us kids pushed two, but we were unable to get it off. Then the bus driver got the bus under control and backed up and off of him. 15. Who was at fault and why? the boy because he was chasing the bus. . . ."

On direct examination, Sprague had testified that the bus remained upon Harry Webb for a period of twenty or thirty minutes.

Exhibit 8 was a report made by Peggy Clark and contained a statement which reads: " . . . 15. Who was at fault and why? It was Harry Webb's fault for running so near to the trolley."

The purpose of offering exhibit 8 was to impeach Miss Clark, who had testified that she did not see Harry Webb before the accident; that she did not know it was Harry Webb, and prior to the accident had not noticed the boy that was injured; further, that she did not see him run into the street or alongside the bus. In her statement (exhibit 8) she stated:

"The crowd was following the coach. Harry Webb was by the front right wheel, running. His trouser cuff was caught under the wheel and he was thrown off balance. . . ."

It is contended by appellants that the introduction of these exhibits constituted reversible error, in that they submitted to the jury the conclusions drawn by the witnesses.

An additional objection was made to the introduction of exhibit No. 8, the ground being that no impeaching question had been asked prior to the introduction of the exhibit. The respondent caused the exhibit to be marked for identification and then proceeded as follows:

"Q. Showing you Defendant's Exhibit '8' for identification, is this your signature? A. Yes, it is my writing. Q. Is this your signature on this document? A. Yes. Q. Where did you receive it? A. It was sent to me through the mail. Q. And you filled it out at home? A. Yes, sir. Q. Nobody was present when you wrote that, were they? A. No. Q. You filled it out and mailed it back to the claim agent? A. Yes. Q. That is dated January 16, 1943? A. Yes. Q. Is that the date that you made that out? A. I suppose so. Q. That would be the day after the accident? A. Yes. MR. SCHRAMM: I offer this in evidence. MR. HAUGLAND: I object to that. It is improper. That has no relation to the case. It is not based upon any particular question. MR. SCHRAMM: I will show it to you as soon as it is in evidence. A. I wrote that statement. I saw everything that is there. Everything I put down there is what I saw.. THE COURT: What is the objection to the statement by counsel here? MR. HAUGLAND: Merely because he has the witness here on the stand he is trying to introduce a writing in here where there is no contest. It is not proper cross examination. THE COURT: He has a right for impeachment if that is the purpose. MR. HAUGLAND: There was no impeaching question asked. That is the trouble with his offer

at this time. MR. LEADER: I object to it for the reason that the statement is no different than her statement made to counsel. MR. SCHRAMM: I suggest that we let the court see the statement and he will see where it is different. I will point it out. THE COURT: Yes. (Court examines statement.) It will be admitted. I will allow you an exception. . . . "

The respondent urges that the privilege of cross-examination gave it the right to impeach the witnesses by the introduction of the exhibits.

■ This court has considered the question presented here on several occasions, and the rule to be followed was well stated in *Johnson v. Caughren*, 55 Wash. 125, 104 Pac. 170, in which case this court said:

"The general rule is that a witness must testify to facts, not opinions; that whenever the question to be determined is to be inferred from particular facts which can be readily produced before the jury, and the inference to be drawn therefrom is within the common experience of men in general, requiring no special knowledge, skill or training, the inference or conclusion is to be drawn by the jury and not the witness. . . . These matters could be related to the jury by the witnesses substantially as they were observed by the witness, and the jury were just as capable of drawing just inferences from them as were the witnesses themselves. This being so, it was the province of the jury to draw the inference, and it was error to let the witnesses draw it for them."

We adhered to this holding in the following cases: *Truva v. Goodyear Tire & Rubber Co.*, 124 Wash. 445, 214 Pac. 818; *Andersen v. Seattle Automobile Co.*, 147 Wash. 76, 265 Pac. 162; *Cleasby v. Taylor*, 176 Wash. 251, 28 P. (2d) 795; *Hill v. Great Northern Life Ins. Co.*, 186 Wash. 167, 57 P. (2d) 405; *Thomas v. Inland Motor Freight*, 190 Wash. 428, 68 P. (2d) 603; *Warren v. Hynes*, 4 Wn. (2d) 128, 102 P. (2d) 691.

■ In *State v. Hazzard*, 75 Wash. 5, 134 Pac. 514, there will be noticed the following holding of this court relative to the admission of opinions or conclusions of witnesses sought to be introduced on cross-examination:

"One Esther Cameron was a witness on behalf of the state. During a period of about two weeks while the Williamson

girls were at Olalla, this witness had been employed by the defendant to assist in their care. In her direct examination she detailed the facts so far as she knew them relative to what she saw and heard touching the condition of the girls and their treatment during the time that she was there employed. On cross-examination, the defendant sought to show that this witness had, in a letter to the defendant dated October 14, 1911, made the statement that she knew that the defendant had done nothing wrong. The letter was offered in evidence and excluded. Error is predicated upon this ruling. The rule adopted by some authorities is invoked, which is that, where there is an inconsistency between the belief of a witness, as indicated by his previous declarations, and that which would naturally be indicated by his examination in chief, such previous declarations may be shown. But this rule, we think, is inapplicable here. The testimony of the witness in chief was simply a detailing of facts without indicating a general belief on the part of the witness as to the defendant's guilt or innocence. The statement in the letter was nothing more than the expression of an opinion. In such a case, the rule is that previous statements made by the witness as to a matter of opinion or a conclusion cannot be shown although they may tend to contradict inferences which might be drawn from the recital of the facts as given in the testimony of the witness during the examination in chief. *People v. Stackhouse,* 49 Mich. 76, 13 N. W. 364; *Saunders v. City & Suburban R. Co.,* 99 Tenn. 130, 41 S. W. 1031; *Drake v. State,* 29 Tex. App. 265, 15 S. W. 725; *Welch v. State,* 104 Ind. 347, 3 N. E. 850."

Accord: *Norman v. Shipowners' Stevedore Co.,* 59 Wash. 244, 109 Pac. 1012.

We find the holding in *Backstrom v. Kaufmann Department Stores,* 266 Pa. 489, 110 Atl. 235, in point. In that case the court stated:

"At the trial plaintiff called a witness who testified only to that which he says he saw and heard, and, on cross-examination identified a paper which he had signed shortly after the accident. To contradict his testimony defendant later offered this paper in evidence, and it was admitted except the words 'I cannot blame Kaufmann's driver in any way.' These were excluded, and we think properly, because confessedly they were a statement of opinion not contradicting anything testified to by the witness. Defendant now claims, however, that their exclusion caused

the balance of the sentence to express a meaning different from that which was intended, and, grammatically speaking, this is true. At the trial no objection was made on this ground, and if it had been it could not have resulted in the admission of improper evidence, especially as an explanation to the jury would have made clear the true meaning of the balance of the sentence."

The following pertinent statement is found in *New York Central R. Co. v. Dunbar*, 296 Fed. 57:

"Upon the trial the defendant in error called employees of the plaintiff in error who previously had made statements in writing to their employer. They were confronted with these statements upon cross-examination. Counsel was permitted, under direction of the court, to inquire as to previous statements made, which involved contradictions in their testimony given upon the trial. It was sought to introduce the full statements, and these were objected to. Much of what was contained in the statements was not in contradiction with their present testimony, while some was. Some statements were irrelevant testimony, and opinions given as to the cause of the injury, and conclusions as to who was at fault. These statements were properly excluded. The trial court gave full opportunity to counsel for plaintiff in error in using the statements, where any contradictions existed. There was no error in this ruling."

In *Bright v. Wheelock*, 323 Mo. 840, 20 S. W. (2d) 684, 66 A. L. R. 263, the supreme court of Missouri, in a well-considered opinion, said:

"While it is the established rule that a witness may be interrogated on cross-examination (for the purpose of indirectly impeaching and discrediting the witness) as to his prior testimony in court, or prior statements made out of court, respecting *matters of fact,* it is an equally well-established rule of law, as announced by the weight of juristic authority, that a non-expert witness (who testifies as to facts) cannot be impeached or discredited by interrogating him, on cross-examination, as to prior contradictory and conflicting *expressions of opinion* given by him, either by way of testimony in court, or by way of statements made out of court.

"The latter rule of law is thus clearly stated in 40 Cyc. 2712: 'A witness who gives opinion evidence may be discredited by showing that he has expressed an opinion in-

consistent with that expressed by him on the stand; *but a witness who testifies as to facts cannot be discredited by a showing of prior expressions of opinion by him,* even though such expressions tend to contradict the inferences which might be drawn from his recital of facts, or are wholly inconsistent with the facts testified to.' (Italics ours.)"

The rule was announced in *Schneiderman v. Sesanstein,* 121 Ohio St. 80, 167 N. E. 158, 64 A. L. R. 981, in words as follows:

"A further assignment of error alleged is the claimed undue limitation of cross-examination of the witness Greenfield. This witness observed the accident, and upon direct examination testified relative to the occurrence, and also with reference to the speed of the defendant's automobile, which was just ahead of the truck being driven by the witness. In the course of the cross-examination, counsel for the plaintiff asked the witness whether in a conversation with counsel the witness had not previously made certain statements to him which were in effect that the defendant was at fault. A mere conclusion or opinion of the witness was sought, which was not competent either upon direct or cross-examination. An inquiry is incompetent which seeks the opinion of the witness upon the ultimate question involved in the case, in this instance the very issue to be submitted to and determined by the jury. Further, the statements which counsel's questions assumed had been made by the witness were in no wise contradictory to his testimony on direct examination, nor were they competent for the purpose of impeachment."

The above statement was followed by the quotation from 40 Cyc. 2712 as set out in the *Bright* case. Accord: *Green v. State,* 185 Ark. 73, 46 S. W. (2d) 8; *Halsey v. Metz,* 93 S. W. (2d) (Mo. App.) 41; *Davis v. Commercial Fuel & Service Co.,* 318 Ill. App. 225, 47 N. E. (2d) 506.

Respondent has called attention to the following cases, in which it was held that opinion evidence could, under certain circumstances, be introduced to impeach a witness: *De Bose v. State,* 18 Okla. Crim. 549, 197 Pac. 176; *Wolfe v. Madison Ave. Coach Co.,* 171 Misc. 707, 13 N. Y. S. (2d) 741; *Sanders v. Welch Co.,* 92 N. H. 74, 26 Atl. (2d) 34;

These cases uphold respondent's contention to a certain extent, but are so opposed to our leading cases of *Johnson v. Caughren, supra,* and *State v. Hazzard, supra,* that we cannot follow them.

Respondent also cites *State v. Fluhart,* 123 Wash. 175, 212 Pac. 245; *Sterling v. Radford,* 126 Wash. 372, 218 Pac. 205; *State v. Whitelaw,* 163 Wash. 347, 1 P. (2d) 212.

It is argued that the *Fluhart* case is controlling, and this upon the theory that one of the complaining witnesses knew the contents of written instruments at the time a subscription agreement was signed, or knew that the property was in the hands of the receivers. One of the witnesses testified that he did not know of the receivership until after he had paid his money. On cross-examination, he stated that an agreement to purchase was not attached to the subscription agreement at the time he signed the latter, and that if it had been he would not have signed a certain purchase agreement which contained recitals that the property was in the hands of receivers. His attention was called to a portion of the subscription agreement which he had signed concerning the execution of a purchase agreement, and he was asked, "What did you suppose the paragraph referred to?" The trial court sustained an objection to the question that it was improper cross-examination and called for a construction of a written instrument by the witness. This court held that the trial court unduly restricted the cross-examination.

There is a vast factual difference in this and the cited case. There reference was made to a portion of a written instrument which in itself served to contradict the evidence given by the witness, and the purpose of the question was not to have the witness give an opinion, but was to ascertain his failure to notice a portion of the subscription agreement. In this case, the reference is to the factual situation concerning the accident itself, which was completed prior to the writing of the report.

The *Sterling* and *Whitelaw* cases are not in point, for the

reason that the admission of the witnesses did not contain opinions or conclusions.

The rule under consideration is comparatively simple and well settled, but its practical application has resulted in some difficulty and confusion. The principle upon which the rule is founded is obvious. As a witness may be contradicted by other witnesses, so he may be discredited by his own contradictory, oral or written, statements. One of the most frequent methods of impeaching a witness is by proving his prior oral statements in conflict with his testimony. The practice in this regard is necessarily simple and uniform. The first step in the process is to lay the foundation for such proof by asking the witness the specific question whether he ever made the statement which the examining counsel proposes to use against him. When the attention of the witness is called to what it is claimed he had previously said, the time when, the place where, and the person with whom the alleged conversation was had, should be stated. If the witness, without explanation or qualification, admits having made the statement, that is the end of the inquiry, because the witness has discredited himself and there is no need of contradiction. If, on the other hand, the witness denies having made the statement, he may be contradicted by any person who heard him make it. Such evidence of oral statements is usually direct and specific, or at least easily separable from statements not germane to the purpose of contradiction; and this is equally true of any denial, explanation, or qualification which a witness thus discredited may thereafter desire to make.

The rule as to documentary evidence which is used to contradict the oral testimony of a witness, is necessarily somewhat different and has given rise to much discussion. Letters, affidavits, written statements, verified pleadings, depositions, and previous testimony of a witness are admissible to impeach him if they are material to the issue upon which he is testifying and if they tend to contradict or discredit him. When such a writing contains nothing except what is clearly contradictory of material testimony

given by the witness, it would seem to fall within the general rule that a writing is not only the best evidence of what it contains, but the only evidence that is legally admissible of its contents, provided always that it is in existence and can be produced. In such a case, the whole of the writing should be offered in evidence before it is allowed to be read.

There are, however, many instances in which the writing contains irrelevant and incompetent matter, in addition to some parts that are material, competent, and contradictory of the witness. In such a case, the proper rule is that only the material and competent parts should be received and read in evidence. If the writing contains irrelevant or incompetent matter that cannot, or should not, be submitted to a jury, it should be marked for identification and the competent parts thereof read to the jury so as to form a part of the record. Or the documents may be admitted in evidence if the objectionable portions are cut from the exhibit or covered in such manner as not to be read by the jury.

■■■ The right of trial by jury entitles every party to the judgment of the jury as to the ultimate facts upon which liability rests, and it is essential that the jury be left perfectly free to form and declare from the evidence their opinion upon the questions of fact. The question of fault or contributory negligence was an ultimate fact in the case to be determined by the jury as a conclusion from evidentiary facts. To permit the statement of opinion contained in the exhibits was to supplant the jury by the witnesses.

It was error on the part of the trial court to allow the introduction of exhibits 7 and 8. The witnesses admitted writing the exhibits. That ended the impeachment, and all that was necessary to do was to read the material portions to the jury. Another reason for holding the admission of exhibit 8 erroneous was that no proper foundation was laid for its admission.

■■■ The next assignment of error has to do with the question of whether the court should have allowed a trial

amendment of the complaint by charging that respondent did not sound a bell or horn or give a signal of the approach of the bus. The determination of this question depends upon the necessity of the giving of a signal by the driver of the bus. The purpose of giving a warning by bell or horn is to focus the attention of people on the approach of a vehicle. In this case, the evidence shows that Harry Webb and all of the other young people saw the approach of the bus and were fully aware of its course of travel. That being true, it was not necessary to give a signal. *Van Dyke v. Johnson,* 82 Wash. 377, 144 Pac. 540; *Blanchard v. Puget Sound T. L. & P. Co.,* 105 Wash. 226, 177 Pac. 822; *Cole v. Washington Water Power Co.,* 119 Wash. 29, 204 Pac. 1060; *Hoopman v. Seattle,* 122 Wash. 379, 210 Pac. 783; *McClelland v. Pacific Northwest Traction Co.,* 138 Wash. 527, 244 Pac. 710; *Luther v. Pacific Fruit & Produce Co.,* 143 Wash. 308, 255 Pac. 365; *Wooldridge v. Pacific Coast Coal Co., ante* p. 314, 155 P. (2d) 1001.

The court ruled correctly in denying the motion of appellants to amend the complaint by showing that the driver of the bus did not give a signal when he approached the bus zone where the children were waiting.

The judgment is reversed, with instructions to grant a new trial.

BEALS, C. J., BLAKE, ROBINSON, and MALLERY, JJ., concur.