[No. 1359-2.    Division Two.    June 24, 1975.]

WILLIAM LANE et al, *Respondents*, v. OCOSTA SCHOOL DISTRICT NO. 172, *Appellant*.

*Elvin J. Vandeberg* (of *Kane, Vandeberg & Hartinger*), for appellant.

*John D. Schumacher* (of *Charette & Brown*), for respondent.

ARMSTRONG, C.J.—This is an appeal from a superior court judgment requiring a school district to maintain a particular bus stop for the school children of a family in the district. The school district contends (1) that the superior court did not have jurisdiction to hear the matter de novo, and (2) that the school district's refusal to reinstate the original bus stops was not an arbitrary or capricious action affecting fundmental rights. We agree with these contentions and therefore reverse.

During the 1972-73 school year, the five oldest children of William and Judy Lane were transported to school by busses operated by Ocosta School District No. 172. They were picked up and dropped off by the school bus in the following manner. The Lanes live on the south side of State Route 105, known as the Aberdeen-Westport highway, where the speed limit is now 55 miles per hour, and was 60 miles per hour when this action was commenced. In the morning the bus, traveling toward Westport, would stop in the westbound lane of traffic across from the entrance to the Lane driveway, put on its flashing lights, and the children would cross the highway and board the bus. The bus would then proceed approximately 637 feet farther west, cross over the eastbound lane to the south side of the highway to make its stop at a neighborhood store, where it would pull onto the shoulder and pick up about 13 to 15 children. It would then reenter the westbound lane and proceed to the school complex. In the afternoon, the bus, driving east, would first stop at the store to discharge a group of children and then proceed to the end of the Lanes' driveway where it would pull off onto a 21-foot-wide shoulder and discharge the Lane children. No other children used either the morning or the afternoon stop used by the Lane children.

In the summer of 1973, the superintendent of the school district, Robert V. Hill, received a bulletin from the State Superintendent of Public Instruction requesting that because of the energy crisis, efforts be made to decrease the cost of bus transportation, including the elimination and consolidation of bus stops where pupil safety would not be jeopardized. Hill consulted Gerald Nicewonger, transportation supervisor for the district, who contacted the bus drivers for their recommendations on stops which were unsafe or could be eliminated without hardship. Some of those contacted had, at the end of the 1972-73 school year, recommended stops which should be eliminated as unsafe. Included in this group was Norma Browning, the bus driver for the Lane children in the 1972-73 school year,

who stated that the morning stop was unsafe because at times drivers would not heed the flashing lights, but rather would continue on through. As a result of the Superintendent of Public Instruction's bulletin and these consultations, for the 1973-74 school year, approximately 41 stops were eliminated in Ocosta School District No. 172, including the two stops for the Lane children. They were required to use the bus stop at the neighborhood store 637 feet down the highway on the same side of the road as their home. This stretch of shoulder on the south side varies in width from 9½ feet to 21 feet. It appears that the youngest Lane child, who began attending kindergarten in this school year, would walk with his siblings to the store in the morning, but would ride a different bus home at midday, which bus would discharge him at the end of the Lane driveway.

During the beginning of the 1973-74 school year, Mrs. Lane drove the children to school each day rather than have them utilize the bus stop at the store. For a period of time later that fall when Mrs. Lane was ill or her car did not function, the two oldest children walked to the store bus stop, but the other children did not attend school, missing approximately 30 days. When daylight saving time went into effect in 1974 the school district located a morning stop at the end of the Lanes' driveway on the Lanes' side of the road because of the morning darkness. Prior to the fall of 1973, the children were permitted to walk to the store other than to catch the bus, at times chosen by the Lanes and in twos and threes. Later only the two oldest children were permitted to walk to the store.

At a school board meeting held on October 11, 1973, Mr. Lane requested the board to reinstate the original bus stops. The school board was provided with information that State Trooper Marty Eliason considered the area between the Lanes' driveway and the store a safe area for pedestrian travel. After discussion, the board denied Mr. Lane's request. He was also denied a second hearing, which he requested after instituting this lawsuit.

By an amended complaint the Lanes sought injunctive relief in superior court compelling the school district to maintain its original school bus stops and also appealed the decision of the school board. In January 1974, a trial de novo was had on the matter. The minutes of the school board meeting and other exhibits, including pictures of the bus stop areas, were admitted. Several witnesses, including Mr. Hill, Mr. Nicewonger, Ms. Browning, Lieutenant Olson of the Washington State Patrol, and neighbors testified. The trial court reversed the decision of the school board not to reinstate the Lanes' old bus stops and ordered it to maintain a bus stop at the end of the Lanes' driveway on the south side of the road in both the afternoon and morning all year around, until a change in circumstances warranted eliminating it in light of the findings made by the court. The trial court also entered findings of fact and conclusions of law. Specifically it found that the revised bus stops established by the school board were unsafe for the Lane children, primarily because it was unsafe for them to walk along the shoulder of the road to the store. It found that the stops it ordered were the safest for the Lane children. It concluded that the school board had acted arbitrarily and capriciously in refusing to reinstate the stops at the end of the Lanes' driveway and that in exercising its discretion in establishing the bus stops, the board must utilize the highest degree of care practical under the circumstances to avoid causing injury to transported students.

The school district first contends that since the school board's action was purely nonjudicial, RCW 28A.88.010 and RCW 28A.88.015, which purport to authorize an appeal and a trial de novo for review of school board decisions, do not apply. We agree that the superior court did not have appellate jurisdiction to review the subject matter. Additionally, although the court could entertain the Lanes' petition for injunctive relief, it had no jurisdiction to review the decision to determine whether it was arbitrary or capricious because no fundamental right was involved.

RCW 28A.88.010[1] and RCW 28A.88.015[2] provide that one aggrieved by a decision of a school board or administrator may appeal to superior court, in which the matter is to be heard de novo. On the other hand, the power of a court to review the decisions of administrative agencies is constitutionally limited by the rule that a court does not have authority to exercise nonjudicial functions. *Household Fin. Corp. v. State*, 40 Wn.2d 451, 244 P.2d 260 (1952). Thus, a court is not empowered to review on appeal a nonjudicial decision or action of an administrative body, and a statute authorizing such appeal is not available to those allegedly aggrieved by nonjudicial action.

Therefore, it must first be determined whether the decision of the school board to change the bus stop for the Lane children was a judicial or nonjudicial act. Not all administrative actions are nonjudicial. *Floyd v. Department of Labor & Indus.*, 44 Wn.2d 560, 269 P.2d 563 (1954). Various tests have been utilized in determining whether an administrative action is judicial. The most commonly employed tests are whether "the court could have been charged in the first instance with the responsibility of making" the

---

[1]RCW 28A.88.010 provides:

"Any person, or persons, either severally or collectively, aggrieved by any decision or order of any school official or board, within thirty days after the rendition of such decision or order, or of the failure to act upon the same when properly presented, may appeal the same to the superior court of the county in which the school district or part thereof is situated, by filing with the secretary of the school board if the appeal is from board action or failure to act, otherwise with the proper school official, and filing with the clerk of the superior court, a notice of appeal which shall set forth in a clear and concise manner the errors complained of.

"Appeals by teachers, principals, supervisors, superintendents, or other certificated employees from the actions of school boards with respect to discharge or other action adversely affecting their contract status, or failure to renew their contracts for the next ensuing term shall be governed by the appeal provisions of chapter 28A.58 RCW therefor and in all other cases shall be governed by this chapter 28A.88 RCW."

[2]RCW 28A.88.015 provides:

"Any appeal to the superior court shall be heard de novo by the superior court. Such appeal shall be heard expeditiously."

decision and whether the function is one that the courts have historically been accustomed to performing. *Floyd v. Department of Labor & Indus., supra* at 571; *accord, Okanogan County School Dist. 400 v. Andrews,* 58 Wn.2d 371, 374, 363 P.2d 129 (1961); *Citizens Against Mandatory Bussing v. Palmason,* 80 Wn.2d 445, 495 P.2d 657, 50 A.L.R.3d 1076 (1972). There can be little doubt that the decisions of a school board in regard to where a school bus will pick up and discharge pupils is clearly a nonjudicial action. It does not resemble a function which the courts customarily could or do perform. It is difficult to conceive of a more administrative function, one a court is more incapable of performing and one better left to the discretion of a school district.

Since the action of the school board was a nonjudicial one, the Lanes could not utilize RCW 28A.88.010 and RCW 28A.88.015 as a vehicle for obtaining review.

The Lanes also sought injunctive relief in superior court, invoking the inherent power of that court to review the decision of the school board. However, where the challenged act is purely nonjudicial, this inherent review power is limited to a consideration whether the act was arbitrary or capricious and violative of a fundamental right. *State ex rel. Hood v. State Personnel Bd.,* 82 Wn.2d 396, 511 P.2d 52 (1973); *Citizens Against Mandatory Bussing v. Palmason, supra; State ex rel. DuPont-Fort Lewis School Dist. 7 v. Bruno,* 62 Wn.2d 790, 384 P.2d 608 (1963). As shown above, the school board's action here was purely nonjudicial. Therefore, it was not for the trial court to decide for itself what was the most appropriate bus stop for the Lane children because that would amount to substituting its judgment for that of the school board. Review was limited to a determination whether the school district violated a fundamental right of the Lanes in an arbitrary or capricious manner.

The Lanes have suggested no fundamental right which has been violated by the school district's action, and we have found none. Pursuant to statutory mandate,[3] the

---

[3] RCW 28A.24.055; RCW 28A.24.060.

school district has provided bus transportation to the Lane children who live more than 2 miles from their school. However, they are not entitled as a matter of right, nor are any other school children, to be provided bus transportation at their doorstep or even at the end of their driveway. The procedure for transporting the Lane children is by no means so extreme that they are deprived of their right to attend school. Since no fundamental right of the Lanes has been violated, the court did not have the jurisdiction to determine whether the school board's action was arbitrary or capricious. *Tacoma v. Civil Serv. Bd.*, 10 Wn. App. 249, 518 P.2d 249 (1973).

As a final note, the Lanes cite to us the case of *Webb v. Seattle*, 22 Wn.2d 596, 157 P.2d 312, 158 A.L.R. 810 (1945), for the proposition that the school district is bound to utilize the "highest degree of care" in establishing the school bus stops. *Webb* is inapposite to the case at bar. It involved the allegedly negligent *operation* of a school bus at a collection point, not, as here, the discretionary acts of a school board in the making of a particular policy.

The judgment is reversed and the action dismissed.

PEARSON and PETRIE, JJ., concur.