[No. 2367-2.   Division Two.   August 3, 1977.]

THE STATE OF WASHINGTON, *Respondent,* v. RICHARD ALLEN STEPP, *Appellant.*

*Thomas Henderson,* for appellant (appointed counsel for appeal).

*Don Herron, Prosecuting Attorney,* and *Joseph D. Mladinov, Senior Deputy,* for respondent.

REED, J.—Richard Allen "Rick" Stepp was convicted of second-degree murder by a Pierce County jury who also found him to have been armed with a firearm when he committed the crime, thereby invoking the mandatory enhanced punishment provisions of RCW 9.41.025. We reverse the conviction for the reasons set forth herein.

Defendant urges several assignments of error, two of which are meritorious: (1) that certain of the court's instructions to the jury placed improper burdens upon defendant to overcome a presumption of second-degree murder once a homicide was proven, and to prove his defenses of accidental killing and self-defense; (2) that the court improperly refused to allow defendant to introduce a tape recording of statements by two prosecution witnesses that would allegedly have impeached some of their testimony given at trial.

The killing was the tragic culmination of an unfortunate set of circumstances. At about 9 o'clock on the rainy evening of November 14, 1975, the victim, Scott Pierce, and his wife, Tammy, went to the South Tacoma home of a friend, Dennis Frederick. Present also was Frederick's girl friend, Debbie Jacobsen. At about 10 p.m. the two young couples took a short drive to the Bull and Bush Tavern, where they sat for an hour and a half and shared two pitchers of beer. Shortly after 11:30 p.m. the group entered the nearby Rail Tavern. They did not sit down, and decided to leave because they did not feel comfortable with the clientele. After looking about the place for a few minutes, Scott and Tammy Pierce and Debbie Jacobsen went outside and stood near the door under an umbrella, conversing and waiting for Dennis Frederick to emerge so they could go to another tavern. While inside the Rail Frederick had stopped briefly to talk with a friend with whom he worked, Walt Hall. In Hall's group was Rick Stepp, who was known slightly by Frederick, but not at all by the Pierces. Since about 8 p.m. Stepp had drunk approximately six or seven beers at various locations, but testified he was not under the influence of alcohol. He had also, however—

for reasons he could not explain at trial—concealed a loaded .38 caliber revolver down the front of his pants prior to entering the Rail Tavern.

Hall and Stepp apparently intended to visit another tavern also, and asked where Frederick's group was going. Frederick did not know, so Stepp went outside to ask. Tammy Pierce told Stepp it was none of his business where they were going, whereupon he reentered the Rail and commented to Frederick that he did not like Tammy because she was "bitchy." Frederick then exited the tavern and found the members of his group talking about Stepp, whom they regarded as "pushy." Scott Pierce asked Frederick if Stepp had said anything about Tammy. Frederick at first put him off, urging him to forget it and to depart for another tavern, but he finally related Stepp's comment. Pierce thereupon turned to go back into the tavern, and Stepp came out, hands in his pockets. Apparently angered by the insult to his wife, Scott Pierce grabbed Stepp and threw him up against the tavern's outside wall. At this point, versions of the action differ. The jury was entitled to believe the testimony of Tammy, Debbie and Dennis that Pierce tripped Stepp to the ground but struck no blows, was on his knees bending over the supine Stepp, and that moments later Stepp pulled his gun and fired the fatal shot upward into Pierce's chest. Stepp ran off, but was apprehended within the hour.

Stepp's uncorroborated version was that Pierce was beating his upper body up and down on the concrete sidewalk; that Stepp, fearing for his life, pulled his gun and stuck it into Pierce's stomach, telling him to "knock it off"; that Pierce continued to bounce him up and down and the gun went off unintentionally, due to the jarring of his body. Based on this account, Stepp relied on the defenses of self–defense (justifiable homicide under RCW 9.48.170) and the allegedly accidental nature of the shooting (excusable homicide under RCW 9.48.150). The court declined to give certain proposed instructions expressing defendant's theories, although it did instruct on the concepts of excusable and justifiable homicide.

Defendant's argument concerning the burdens of proof thrust upon him is derived from the court's instructions, the following of which we deem controlling:

INSTRUCTION NO. 9

The court instructs you that where a homicide is proved beyond a reasonable doubt, the presumption is that it is murder in the second degree, and if the defendant desires to reduce the degree to manslaughter, the burden is on him to produce evidence of those facts or circumstances which call for such reduction.

INSTRUCTION NO. 17

When a defendant claims that he killed another by accident or misfortune, the burden is upon the defendant to prove that the homicide was done by accident.

In sustaining such burden of proof, it is not necessary for the defendant to prove this to you beyond a reasonable doubt, nor by a preponderance of the evidence. The defendant sustains this burden of proof and is entitled to a verdict of acquittal if from a consideration of all the evidence in this case you have a reasonable doubt as to whether the killing was done by accident or misfortune.

INSTRUCTION NO. 21

When a defendant claims that he killed another in self–defense of his own person, the burden is upon the defendant to prove that the homicide was done in self–defense. It is not necessary for the defendant to prove this to you beyond a reasonable doubt, nor by a preponderance of the evidence. The defendant sustains this burden of proof if from a consideration of all the evidence in the case you have a reasonable doubt as to whether the killing was done in self–defense.

■ In *State v. Roberts,* 88 Wn.2d 337, 344, 562 P.2d 1259 (1977), our Supreme Court emphatically stated that the presumption of second–degree murder formerly allowed to flow from proof of the killing of one human being by another "should no longer be considered a part of the law of homicide in this state", based upon *Mullaney v. Wilbur,* 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881 (1975). Instruction No. 9 falls squarely within the purview of the rule in *Roberts, i.e.,* it improperly shifts the burden to the defendant to overcome a presumption that he is guilty of second–degree murder, thereby violating the dictates of due

process that the burden must remain upon the prosecution to prove beyond a reasonable doubt every element of the crime. *Accord, State v. Kroll,* 87 Wn.2d 829, 558 P.2d 173 (1976).

▉ Instruction No. 21 is almost precisely the same as the self-defense instruction struck down in *Roberts,* again for improperly shifting the burden of proof. Likewise, instruction No. 17 describes the doctrine of excusable homicide due to accident or misfortune in such a way as to violate the holding in *Roberts.* In view of the decisions in *Mullaney v. Wilbur, supra,* and *State v. Kroll, supra,* it is now only permissible to place upon the defendant the obligation to produce evidence, from whatever source, tending to establish the excusable homicide defense; the obligation to prove the absence of the defense remains with the State throughout.[1] The conviction must be reversed because of instructions Nos. 9, 17 and 21.

We turn to a consideration of the court's exclusion of the tape recordings offered to impeach the courtroom testimony of Debbie Jacobsen and Dennis Frederick. The recordings were of statements given by them to Tacoma Police Investigator James Hairston after the shooting, during the early morning hours of November 15, 1975. The alleged points of impeachment concerned defendant's contention that he and Pierce were involved in a physical struggle of such ferocity that he was justified in pulling a gun in self-defense and that the gun could have been discharged accidentally by the jarring of his body. Although

---

[1]Defendant was charged and tried under RCW 9.48.040, which provides in part as follows:

"The killing of a human being, *unless it is excusable or justifiable,* is murder in the second degree when—

"(1) Committed with a design to effect the death of the person killed or of another, but without premeditation; . . ." (Italics ours.)

Effective for offenses committed on or after July 1, 1976, RCW 9.48 was repealed, and first- and second-degree murder were redefined in RCW 9A.32.030 and RCW 9A.32.050. In these statutes, the legislature has removed absence of excuse or justification as elements of the crime to be affirmatively proved, and has instead defined excusable homicide and justifiable homicide among possible "defenses" available to an accused under RCW 9A.16.

the tape recordings were not included in the record on review, we are able to review excerpts from a transcript of them read by counsel in his offer of proof.

The following are examples of alleged inconsistencies defendant sought to expose. At trial, Debbie testified that Pierce was on top of Stepp when the shot went off. Defendant offered to show, obviously for the sole purpose of demonstrating an inconsistency, that she had told the police that Stepp was on top, a statement that she did not recall and doubted that she had made. As for Frederick, his statement to police allegedly differed with his trial testimony concerning the amount of force being used by the victim against Stepp. At trial, he denied having told Investigator Hairston that Pierce was "on top beating [Stepp]" and could not remember all of his prior statement. Another description Frederick could not remember having made to Investigator Hairston was that

> Scott threw Rick up against the cement building there and then threw him down on the ground and was just whaling and beating on him, and the next thing you know a gun went off.

At trial, Frederick characterized the action as a "shuffle" rather than a fistfight, and said he saw no blows being struck.

■ Generally, statements that contradict testimony of a witness are admissible, if not collateral to the principal issue, solely to impeach the witness and not as direct and affirmative proof of the facts to which they relate. *State v. Sandros,* 186 Wash. 438, 58 P.2d 362 (1936); *State v. Jefferson,* 6 Wn. App. 678, 495 P.2d 696 (1972). When the witness does not deny making a contradictory statement, but simply cannot recall making it, the statement may be offered for impeachment within the general rule. *State v. Miles,* 73 Wn.2d 67, 436 P.2d 198 (1968); E. Cleary, *McCormick's Handbook of the Law of Evidence* § 37, at 72 (2d ed. 1972); 3A J. Wigmore, *Evidence* § 1037, at 1042–43 (rev. ed. J. Chadbourn 1970).

Defendant sought to introduce the tape of the complete

interview of Debbie and Dennis. It is clear from excerpts read into the record that much in the interview either was not impeaching or was impeaching on matters collateral to the principal issue of the violence of the altercation, *e.g.,* what Frederick meant when he called Scott "rowdy," and whether he cautioned Scott that "we've all been drinking." The jury already knew that the Pierce group had been drinking. Moreover, although the reputation of a victim for violence, if known to the defendant at the time of the altercation, may be admitted to support a claim of self-defense, Stepp did not know Pierce. Such a bad reputation for violence may be admissible, even if unknown to the accused, to corroborate his claim the other was the aggressor. *State v. Cloud,* 7 Wn. App. 211, 498 P.2d 907 (1972). Here, however, defendant had not put in issue Scott Pierce's reputation for violence, if any. Therefore, the offer of the alleged prior statement by Dennis Frederick that "Scott's the type of person that's rowdy and I can't call him off of people" was an improper attempt, not to impeach an inconsistent statement, but to introduce evidence under the guise of impeachment of the collateral matter of reputation.

In sum, in the event of a new trial, the jury should be permitted to consider, for purposes of impeachment only, a transcript of those statements which are inconsistent with any testimony of a witness concerning the principal issue of the ferocity of the fight that formed the basis for Stepp's defenses of excusable and justifiable homicide. The entire tape should not be admitted, however. Statements that are not contradictory, as well as statements that tend to impeach on collateral issues, should be edited out. *See Webb v. Seattle,* 22 Wn.2d 596, 157 P.2d 312, 158 A.L.R. 810 (1945).

Because defendant has assigned error to other matters that might be involved in a retrial of this case, we will briefly discuss them.

Defendant contends the jury should not have been asked to make a special finding that he was armed with a deadly weapon, thereby invoking the enhanced punishment provi-

sions of RCW 9.95.040, when he was not charged in the information with being armed with a deadly weapon. This assignment of error verges on the frivolous. The information did charge second–degree murder "with a pistol, loaded with powder and ball, that being a *firearm* and invoking the provisions of RCW 9.41.025, relating to increased sentences." (Italics ours.) The jury was instructed as follows:

> If you shall find the defendant guilty of the crime charged in the information, you will be required to answer whether the evidence in the case established that the defendant was armed with a *firearm* at the time of the commission of such offense.

(Italics ours.) The jury thereupon unanimously entered its special finding that defendant was armed with a *firearm* at the time of the offense. It is obvious that the information, instruction and finding in this case all related to the use of a *"firearm"* and not a "deadly weapon" as alleged by defendant. *See State v. Smith,* 11 Wn. App. 216, 521 P.2d 1197 (1974). The procedure was entirely proper.

■■ Defendant has assigned error to certain of the court's other instructions. Not only has no authority been cited to support these assignments, so that we need not consider them on appeal, *State v. Pam,* 1 Wn. App. 723, 463 P.2d 200 (1969), but the instructions were proper statements of the law. In addition, we find no error in the refusal of certain instructions proposed by defendant. Aside from the instructions concerning presumptions which we have heretofore found wanting, the court's instructions adequately allowed him to argue his theory of the case. *State v. Dana,* 73 Wn.2d 533, 439 P.2d 403 (1968).

Finally, we find no abuse of discretion in the sentence pronounced by the court and no other error.

Scott Pierce's death was senseless and avoidable. Regardless of the credibility of Rick Stepp's disputed story that the gun discharged due to the jarring being given him by Pierce, the fact remains that there would have been no shooting had Stepp not—for reasons known only to him—decided to pack an instrument of death with him into the

tavern. This killing is yet another example of a pistol having been available to escalate a hand–to–hand altercation into a tragic outcome. There will be fewer incidents of this sort only when those who try to establish their manhood by carrying guns become aware of the stark, irreversible consequences that may be visited upon others—and themselves.

In the instant case, however, faulty jury instructions deprived defendant of a fair trial by putting upon him the burden of proving his innocence. Our system of justice requires the prosecution to prove every element of guilt beyond a reasonable doubt, and does not tolerate a defendant's having to affirmatively disprove his guilt.

Reversed and remanded for a new trial, or other proceedings consistent herewith.

PETRIE, C.J., and PEARSON, J., concur.

Petition for rehearing denied August 23, 1977.

Review denied by Supreme Court February 3, 1978.