# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72221-2-I |
| Respondent, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | PUBLISHED OPINION |
| LAVELLE XAVIER MITCHELL, | ) ) | |
| Appellant. | ) ) | FILED: November 2, 2015 |
| | ) | |

APPELWICK, J. — Mitchell was convicted of unlawful possession of a firearm in the first degree. The firearms were discovered when a fare enforcement officer stopped him to check proof of fare payment as he exited a Metro bus. Mitchell argues he was unlawfully detained and the trial court erred by not suppressing evidence of the firearms. We affirm.

## FACTS

On March 2, 2012, fare enforcement officer (FEO) Christopher Johnson was checking passengers' proof of payment on King County Metro Transit (Metro) RapidRide buses.[1] Lavelle Mitchell and several other passengers exited a RapidRide bus at Pacific

---

[1] At the time, FEO Johnson was a security officer employed on a contract with Metro. FEOs are not police officers. Their role is to ensure individuals riding on public transportation have paid the fare. This task is particularly important with the RapidRide buses, which allow travelers to prepay their fare and enter through the bus's rear door without showing proof of payment to the driver.

Highway South near 240th Street. FEO Johnson was waiting at the bus stop, by the bus's rear door. As Mitchell and the other passengers exited from the rear of the bus, FEO Johnson asked each of them to display proof of fare payment.

Mitchell was unable to provide proof of his fare payment. He told FEO Johnson that he had paid the fare with cash and received a transfer, but he gave his transfer to another passenger as he departed the bus. FEO Johnson responded that proof of payment is nontransferable.

At that point, FEO Johnson asked for Mitchell's identification. Mitchell did not have his identification with him. He verbally provided FEO Johnson with his name, date of birth, and address instead. FEO Johnson then radioed for assistance in verifying Mitchell's identity. King County Sherriff Deputy George Drazich, who was already nearby, was dispatched to assist FEO Johnson. He arrived in a matter of minutes. When Deputy Drazich ran Mitchell's information, he discovered that Mitchell had an outstanding warrant for his arrest.

Deputy Drazich then placed Mitchell under arrest and handcuffed him. Before searching Mitchell incident to arrest, Deputy Drazich asked Mitchell if he had any weapons. Mitchell revealed that he was carrying two guns in his jacket. Deputy Drazich searched Mitchell and recovered two loaded revolvers.

Mitchell had been previously convicted as a juvenile of a serious offense. As a result, he was charged with unlawful possession of a firearm in the first degree.

Before trial, Mitchell moved to suppress the evidence obtained through the search incident to arrest, arguing that the original detention was unlawful. The trial court denied this motion.

2

At trial, Mitchell asserted the affirmative defense that at the time of his prior conviction he had not received statutory notice that it was illegal for him to possess a firearm. Mitchell was convicted as charged. He appeals.

## DISCUSSION

### I. Authority to Stop

Mitchell argues that the trial court erred in denying his motion to suppress, because FEO Johnson was not authorized to stop him. When reviewing a motion to suppress, we evaluate findings of fact under the substantial evidence standard. State v. Levy, 156 Wn.2d 709, 733, 132 P.3d 1076 (2006). Conclusions of law are reviewed de novo. Id. We may affirm the trial court for any reason supported by the record and the law. State v. Kelley, 64 Wn. App. 755, 764, 828 P.2d 1106 (1992).

Mitchell's argument requires us to decide whether FEO Johnson was statutorily authorized to request proof of payment from passengers disembarking the bus. Chapter 35.58 RCW defines the scope of authority of FEOs for metropolitan municipal corporations, including Metro.[2] First, RCW 35.58.580 sets out certain responsibilities of persons traveling on public transportation. They must pay the established fees and produce proof of fare payment when asked by someone tasked with monitoring fare

---

[2] In the court below, the State asserted that chapter 81.112 RCW authorized FEO Johnson to ask Mitchell for proof of fare payment. The trial court accepted the State's argument and concluded that FEO Johnson had authority to stop and request proof of payment under Title 81 and chapter 7.80 RCW. As the State now concedes, chapter 81.112 RCW does not apply to Metro—it explicitly governs regional transit authorities, not metropolitan municipal corporations. RCW 81.112.020. But, chapter 35.58 RCW mirrors chapter 81.112 RCW—RCW 35.58.585 gives Metro FEOs the same powers that RCW 81.112.210 gives Sound Transit FEOs. Therefore, we may affirm the trial court on this basis if we conclude chapter 35.58 RCW provided FEO Johnson the authority to stop Mitchell. See Kelley, 64 Wn. App. at 764 (noting that the trial court can be affirmed on any basis supported by the record and the law).

payment. RCW 35.58.580(1). Failing to pay the required fare or produce proof of payment when asked is a civil infraction. RCW 35.58.580(2)(a)-(b). Additionally, RCW 35.58.585(1) empowers metropolitan municipal corporations to designate individuals to monitor fare payment. These persons have all the powers granted to enforcement officers under RCW 7.80.050 and 7.80.060. RCW 35.58.585(2)(b). This means an FEO can issue a notice of civil infraction when the infraction occurs in the officer's presence, request identification, and detain a person for a period of time reasonably necessary to identify the person. RCW 7.80.050-.060. RCW 35.58.585(2)(b) also specifically grants FEOs the additional authority to:

> (i) Request proof of payment from passengers;
> (ii) Request personal identification from a passenger who does not produce proof of payment when requested;
> (iii) Issue a citation conforming to the requirements established in RCW 7.80.070; and
> (iv) Request that a passenger leave the bus or other mode of public transportation when the passenger has not produced proof of payment after being asked to do so by a person designated to monitor fare payment.

In challenging the legality of the stop, Mitchell does not dispute that FEOs have the authority to request proof of payment from passengers. Rather, he construes the word "passenger" in RCW 35.58.585 very narrowly. He argues that the word "passenger" includes only those persons physically present on a mode of public transportation. Under this theory, an FEO may request proof of payment from someone currently traveling on a bus, because that traveler's freedom of movement is already restricted by his or her presence on a moving vehicle. He argues that once the person disembarks the bus, additional authority is needed to request proof of payment, because to do so an FEO must first stop the person.

4

We disagree with Mitchell's reading of RCW 35.58.585(2)(b)(i). Here, there is no question Mitchell was a passenger. FEO Johnson witnessed Mitchell disembarking the bus. He asked Mitchell and the other departing passengers for their proof of payment as they stepped off the bus. By using the bus, as a passenger, Mitchell had already incurred the obligation to display proof of payment when asked. See RCW 35.58.580(1), .020(16) (defining "proof of payment" as "evidence of a fare prepayment authorized by a metropolitan municipal corporation or a city-owned transit system for the use of buses or other modes of transportation."). Under these facts, FEO Johnson acted within the scope of his statutory authority by requesting proof of payment from Mitchell. Additional authority to detain was unnecessary.

And, when FEO Johnson asked Mitchell to show his proof of payment, Mitchell voluntarily responded that he did not still have his transfer. In other words, he failed to show proof of payment—a civil infraction under RCW 35.58.580(2)(b). This triggered RCW 35.58.585(2)(b)(ii), which authorized FEO Johnson to request personal identification from Mitchell. He did so, and Mitchell was unable to provide government issued identification. Mitchell's failure to provide identification triggered RCW 7.80.060. Under this provision, FEO Johnson had the authority to detain Mitchell for the time reasonably necessary to identify him. RCW 7.80.060. Accordingly, FEO Johnson radioed for assistance and, within minutes, Deputy Drazich arrived and confirmed Mitchell's identity. At each step of this encounter, FEO Johnson acted within the scope of his statutory authority.

Despite this clear statutory authority, Mitchell contends that FEO Johnson unlawfully detained him by asking him to show proof of payment. He argues that FEO

Johnson had no reason to believe Mitchell had committed an infraction until after he requested proof of payment, so the detention was unlawful. Mitchell relies on State v. Duncan, 146 Wn.2d 166, 43 P.3d 513 (2002) for this proposition, but he misreads that case. Duncan recognized that, when investigating a civil infraction, an officer does not need a reasonable articulable suspicion of criminal activity to detain someone. See 146 Wn.2d at 179 (distinguishing stops for criminal activity from stops for civil infractions). Instead, the prevailing consideration is whether the officer acted within the scope of his statutory authority. See id. The sole statutory authority there was RCW 7.80.050, which permits an enforcement officer to issue a notice of civil infraction when the infraction occurs in the officer's presence or the officer has reasonable cause to believe a civil infraction was committed. Id. at 178. But, RCW 35.58.585 explicitly gives FEOs powers above and beyond those granted to officers under RCW 7.80.050—including the power to request proof of payment. RCW 35.58.585(2)(b). Considering FEO Johnson's statutory authority under RCW 35.58.585(2)(b), if requesting proof of payment constitutes a detention, it is a lawful detention.

Mitchell does not challenge the constitutionality of chapter 35.58 RCW.[3] It is sufficient that the stop and detention of Mitchell was statutorily authorized. We hold that the trial court did not err in refusing to suppress the evidence obtained as a result of the subsequent search incident to arrest.

---

[3] Mitchell challenged the constitutionality of the mirrored chapter 82.112 RCW in the court below. However, he has not raised that argument on appeal.

6

II. Ineffective Assistance of Counsel

Mitchell also argues that he received ineffective assistance of counsel. Specifically, he claims that he never received oral notice that he had lost the right to own or possess a firearm and that the transcript from his prior offense proceedings shows this. He contends that his trial attorney should have investigated that transcript to corroborate his testimony.

Lack of notice of the firearm prohibition is an affirmative defense to unlawful possession of a firearm. State v. Breitung, 173 Wn.2d 393, 403, 267 P.3d 1012 (2011). The defendant has the burden of proving this defense by a preponderance of the evidence. Id. To succeed, the defendant must show that when he was convicted of the prior offense, he did not receive either oral or written notice that it was illegal for him to own a firearm. Id.; see also RCW 9.41.047(1)(a) (requiring the convicting court to notify a person orally and in writing when a conviction makes him or her ineligible to possess a firearm).

We review ineffective assistance of counsel challenges de novo. State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To succeed, the defendant must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the defendant. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

The record below may well show that trial counsel did not investigate the transcript of Mitchell's prior sentencing hearing. But, whether the failure to do so was ineffective turns on whether the transcript would have shown what Mitchell claims. That transcript is not in the record on appeal. Nor is there evidence that it was shown to the sentencing

court. Therefore, we cannot conclude on this record that counsel was deficient or that Mitchell was prejudiced. [4] See State v. Garcia, 45 Wn. App. 132, 140, 724 P.2d 412 (1986) ("A party seeking review has the burden of perfecting the record so that the appellate court has before it all the evidence relevant to the issue.").

III. Lack of Notice Affirmative Defense

We review affirmative defenses for sufficiency of the evidence. State v. Lively, 130 Wn.2d 1, 17, 921 P.2d 1035 (1996). This analysis asks whether, viewing the evidence in the light most favorable to the State, a rational trier of fact could have found that the defendant failed to prove the defense by a preponderance of the evidence. Id.

Even without corroborating evidence, Mitchell claims no reasonable juror could have concluded that he had both written and oral notice of the firearm prohibition. Mitchell asserts that "there is simply no evidence in the record" that the convicting court notified him that he was ineligible to possess a firearm. But, the State showed that Mitchell received written notice. It introduced Mitchell's statement on plea of guilty, which the trial court admitted into evidence.[5] This document was signed by Mitchell and acknowledged the consequences of a guilty plea—including that he would lose the right to own or possess firearms. Mitchell's statement on plea of guilty, in addition to providing that Mitchell was ineligible to possess firearms, contained a bracketed statement in capital

---

[4] Additionally, though Mitchell only asserts that his trial attorney should have discovered the sentencing court transcript, the convicting court transcript would have also been necessary to corroborate his testimony that he never received oral notice. RCW 9.41.047(1)(a) (providing that the convicting court has the responsibility of informing an individual of the firearm prohibition).

[5] The name on both the statement on plea of guilty and the disposition order is Lavelle Brown. Mitchell testified that at that time, his last name was Brown. He confirmed that he signed both documents.

8

letters: "[JUDGE MUST READ THE FOLLOWING TO OFFENDER]." The trial court also admitted Mitchell's disposition order into evidence. This document similarly notified Mitchell that he could not own, use, or possess a firearm. It was signed by the judge, Mitchell, and Mitchell's attorney.

But, Mitchell points out that these exhibits do not establish that he was actually given oral notice. He claims the burden rested with the State to affirmatively establish evidence of oral notice. Mitchell's argument rests on an inaccurate reading of State v. Minor, 162 Wn.2d 796, 174 P.3d 1162 (2008) and Breitung, 173 Wn.2d 393. In both cases, the record was silent on the question of oral notice, so the court assumed no oral notice was given. Minor, 162 Wn.2d at 800; Breitung, 173 Wn.2d at 403. But, neither Minor nor Breitung shifted the burden of establishing oral notice to the State. See Minor, 162 Wn.2d 800-04 (no discussion of the burden of proof); Breitung, 173 Wn.2d at 403 ("Lack of notice under RCW 9.41.047(1) is an affirmative defense, which Breitung must establish by a preponderance of the evidence.").

Here, the only evidence to support his claim that he was not given oral notice he could not possess firearms came from Mitchell himself. He testified that he did not remember receiving oral notice. The State cross-examined him about the gaps in his memory regarding the statement on plea of guilty. The jury was free to make its own judgment as to whether Mitchell's statements were credible. State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990) (noting that credibility determinations are for he trier of fact). Construing this evidence in the light most favorable to the State, the jury could have disbelieved Mitchell. No additional evidence from the State would have been necessary to conclude that Mitchell failed to prove the affirmative defense by a

preponderance of the evidence. We reject Mitchell's challenge to the sufficiency of the evidence on the affirmative defense.

We affirm.

Appelwick, J

WE CONCUR:

Trickey, J          Becker, J.