FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2017 MAY -1 AM II: 01



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 73850-0-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| DERRIUS D. FORCHA-WILLIAMS, | ) | |
| | ) | |
| Appellant. | ) | FILED: May 1, 2017 |
| | ) | |

MANN, J. — Derrius Forcha-Williams was charged with one count of first degree rape, second degree assault, and the lesser included offenses of second degree rape and third degree assault. At trial, the victim, P.C., testified inconsistently about the types of intoxicants she consumed the day of the assault. When confronted with the inconsistent statements, she stated she did not remember making them. Forcha-Williams was found guilty of second degree rape. Forcha-Williams argues on appeal that he was denied effective assistance of counsel when his attorney failed to follow the correct procedure necessary to allow impeachment of P.C. We disagree and affirm the trial court.

I

In December 2012, P.C. was homeless. On the morning of December 3, 2012, a man, later identified as Forcha-Williams orally and vaginally raped P.C. in the dumpster area behind a restaurant in Federal Way. During the course of the attack, Forcha-Williams put P.C. in a chokehold from behind, kicked her, hit her several times in the body, and hit her in the right eye.

After Forcha-Williams left the dumpster area, P.C. went into a nearby Jack in the Box. One employee took P.C. to the bathroom while another called 911. After giving a formal statement to a police officer, P.C. was transported by ambulance to the hospital.

At the hospital, Detective Kristopher Krusey asked P.C. if she was "intoxicated or impaired from using any kind of drug or alcohol." P.C. told Krusey that "she had a few beers that morning" and that "she had recently used OxyContin earlier that night and also took an unknown blue pill that was given to her by an unknown subject not involved in the sexual assault." Urinalysis and blood testing two hours after the incident indicated that amphetamine, cocaine, and cannabis were present in her system. No other detectable substance was found, such as alcohol or oxycodone. The deoxyribonucleic acid (DNA) analysis of P.C.'s rape kit revealed the presence of DNA from only two people: P.C. and Forcha-Williams. The forensic scientist testified that the probability of selecting an unrelated individual from the U.S. population with a matching profile was 1 in 3.4 sextillion.

In February 2013, the police arrested Forcha-Williams. The State charged Forcha-Williams with one count of rape in the first degree and one count of assault in the second degree.

-2-

Before trial, Forcha-Williams sought to admit P.C.'s recent drug and alcohol use, arguing the recent drug use was relevant to P.C.'s ability to accurately perceive and remember the alleged incident. The State conceded P.C.'s recent drug use was relevant to P.C.'s perception and memory of the events. The trial court agreed and admitted evidence of P.C.'s use of intoxicants near the time of the alleged incident. In her trial testimony, P.C. acknowledged consuming methamphetamine, cocaine, and alcohol the day before the alleged incident. P.C. testified that she did not consume any intoxicating substances after 6 p.m. the evening before the alleged incident. P.C. denied feeling the effects of the drugs at the time of the incident.

During cross-examination, defense counsel questioned P.C. about her use of intoxicants in the hours before the alleged incident, asking if she remembered talking to Krusey, and if she remembered telling one of the officers that she "had a few beers," "had had some Oxy," and "had taken a blue bill" that morning. P.C. said that she did not remember telling an officer that she had consumed any beers, done "Oxy", or had taken a "blue pill." In addition, she was unable to say what the blue pill would have been, responding, "[t]he only blue pill I know of is not for women." She also stated that she does not do "Oxy." P.C. was not asked to confirm or deny whether she made the statements to Krusey. Defense counsel did not attempt to admit extrinsic evidence of the prior inconsistent statements at that time.

Throughout P.C.'s testimony, she was unable to remember several events from that day, such as riding in an ambulance and being photographed by officers. P.C. did add that her not remembering "doesn't mean it didn't happen." On redirect examination, P.C. also indicated that she did not remember whether she had anything to drink on the

-3-

day of or the day before the incident. Only that, at the time of the incident, she was not feeling the effects of any drugs or alcohol.

Krusey testified two days after P.C. On cross-examination, defense counsel questioned Krusey about what P.C. had told him at the hospital. Krusey was asked whether P.C. told him that she had used drugs or alcohol on the morning of the incident. Krusey confirmed that P.C. told him that she had consumed "a few beers that morning." The prosecutor objected to Krusey's testimony as hearsay. The objection was sustained. The prosecution did not move to strike the testimony, and the jury was not instructed to disregard it.

Defense counsel requested a hearing outside the presence of the jury. Defense counsel argued that his questions to Krusey were proper impeachment under ER 607 because P.C. either denied her statements to Krusey or claimed she did not have an independent memory of them. The trial court confirmed its original ruling sustaining the prosecutor's objection, and ruled that because P.C. testified only that she did not recall making the statements, any impeachment was on the collateral matter of P.C.'s memory. Defense counsel never requested for P.C. to be recalled as a witness so that proper foundation could be established to admit extrinsic evidence of her inconsistent statements.

At the end of trial, the jury found Forcha-Williams guilty of the lesser offense of second degree rape. Forcha-Williams appeals.

II

Forcha-Williams argues on appeal that he was denied effective assistance of counsel when his attorney failed to follow the correct procedure necessary to allow

-4-

impeachment of P.C. using her prior inconsistent statements regarding the type of intoxicants she was on the morning of the attack. We disagree.

Every accused person has a constitutional right to the effective assistance of counsel. U.S. Const. Amend. VI; Const. art. I, § 22; Strickland v. Washington, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. Grier, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). The burden is on the defendant to demonstrate his counsel was constitutionally ineffective. Grier, 171 Wn.2d at 33. We review ineffective assistance of counsel challenges de novo. State v. Mitchell, 190 Wn. App. 919, 927-28, 361 P.3d 205 (2015), review denied, 185 Wn.2d 1024, 377 P.3d 709 (2016).

To prevail on a claim of ineffective assistance, Forcha-Williams must show (1) his attorney's representation was deficient and (2) Forcha-Williams was prejudiced, meaning there is a reasonable probability that the result of the trial would have been different absent the challenged conduct. Strickland, 466 U.S. at 687-88.

Performance is deficient if it falls "below an objective standard of reasonableness." Strickland, 466 U.S. at 688. A defendant alleging ineffective assistance must overcome "a strong presumption that counsel's performance was reasonable." State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). "When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." Kyllo, 166 Wn.2d at 863. "A criminal defendant can rebut the presumption of reasonable performance by demonstrating that 'there is no conceivable legitimate tactic explaining counsel's performance.'" Grier, 171 Wn.2d at 33 (quoting State v. Reichenbach, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)). "A fair assessment of attorney performance requires that every effort be made to eliminate the

distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.

To satisfy the prejudice prong, the defendant must establish that "there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different." Kyllo, 166 Wn.2d at 862. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. The defendant "'need not show that counsel's deficient conduct more likely than not altered the outcome in the case.'" State v. Thomas, 109 Wn.2d 222, 226, 743 P.2d 816 (1987) (quoting Strickland, 466 U.S. at 693)).

The trial court here ruled that defense counsel could not admit extrinsic evidence of P.C.'s prior statements to Krusey because defense counsel only asked P.C. whether she "remembered" telling Krusey that she had consumed a couple of beers that morning, used OxyContin earlier that night, and had taken an unknown blue pill. The trial court found that because counsel did not specifically ask P.C. whether she had made the prior statement, any extrinsic evidence would only be on the "collateral matter of her inability to recall."

"Evidence offered to impeach is relevant only if (1) it tends to cast doubt on the credibility of the person being impeached, and (2) the credibility of the person being impeached is a fact of consequence to the action." State v. Allen S., 98 Wn. App. 452, 459-60, 989 P.2d 1222 (1999). To impeach a witness with a prior inconsistent statement under ER 613(b), the witness must be given an opportunity to admit or deny the statement and to explain it. This can be done either before or after the extrinsic

evidence is introduced. State v. Horton, 116 Wn. App. 909, 916, 68 P.3d 1145 (2003) (citing State v. Johnson, 90 Wn. App. 54, 950 P.2d 981 (1998)). If the witness is asked before the extrinsic evidence is admitted, and admits making the prior statement, extrinsic evidence of the statement is cumulative and thus inadmissible. State v. Babich, 68 Wn. App. 438, 443, 842 P.2d 1053 (1993). If the witness denies making the prior statement, extrinsic evidence of the statement is admissible unless it concerns only a collateral matter. If the witness is not asked about the statement during direct or cross-examination, impeachment may still be accomplished at a later point so long as arrangements are made for the witness to be recalled. Horton, 116 Wn. App. at 915-16.

This court held in Horton that a defense counsel's failure to comply with ER 613(b) regarding the use of extrinsic evidence for a prior inconsistent statement, may fall below an objective standard of reasonableness depending on the particular facts and circumstances of the case. Horton, 116 Wn. App. at 917.

The defendant in Horton was charged with rape of a 13-year-old child, S.S. A medical examination of S.S. found "penetrating trauma to the hymen." Horton, 116 Wn. App. at 911. Prior to trial, S.S. told a Child Protective Services (CPS) investigator that she had been having sexual intercourse with a boy. Defense counsel also interviewed one of S.S.'s friends that reported that S.S. had been bragging about having sexual intercourse with a boy, M.P. Horton, 116 Wn. App. at 913. At trial, the prosecutor asked S.S. whether she had engaged in sexual intercourse with any person other than the defendant. She responded: "No." Horton, 116 Wn. App. at 913. Defense counsel then asked S.S. during cross-examination to confirm that she had told the prosecutor during direct examination that she had not engaged in sexual intercourse with anyone

-7-

other than the defendant. Defense counsel did not ask S.S. to explain or deny her prior statements to the CPS investigator or her friend, nor did she ask the court to have S.S. remain in attendance. Horton, 116 Wn. App. at 913.

In Horton, the defense counsel wanted to call the CPS investigator and S.S.'s friend to relate S.S.'s pretrial statements about sexual activity with M.P. The trial court sustained the State's motion to exclude the testimony because defense counsel had not complied with ER 613(b). Horton, 116 Wn. App. at 914. On appeal, the court held that defense counsel's failure to properly impeach the victim fell below the objective standard for reasonableness. Horton, 116 Wn. App. at 916-17. The court held, "noncompliance with ER 613(b) was entirely to Horton's detriment; . . . compliance with ER 613(b) would have been only to his benefit; and thus . . . counsel's noncompliance could not have been a strategy or tactic designed to further his interests." Horton, 116 Wn. App. at 916-17.

Forcha-Williams contends that, like Horton, defense counsel's failure to follow the proper procedure to admit the extrinsic evidence, and failure to recall P.C. in order to do so, was constitutionally deficient performance. But here, unlike Horton, defense counsel asked P.C. during cross-examination whether she remembered telling one of the officers that she "had a few beers," "had some Oxy," and "had taken a blue bill" that morning. P.C. said that she did not remember telling an officer that she had consumed any beers, done "Oxy", or had taken a "blue pill." Defense counsel correctly laid the foundation for Krusey's subsequent extrinsic evidence testimony. While Forcha-Williams does not assign error to the trial court's decision, arguably, the trial court erred

in sustaining the State's objection and not admitting Krusey's testimony to impeach P.C. on her inconsistent statements.

This case is consistent with this court's decision in State v. Newbern, 95 Wn. App. 277, 293-94, 975 P.2d 1041 (1999). In Newbern, the State followed a similar impeachment process as the defense counsel attempted in this case. The State questioned the witness about prior inconsistent statements she made in an interview, and, in response, the witness claimed to have no memory of the interview. Newbern, 95 Wn. App. at 282. The trial court then permitted the State to impeach this witness with extrinsic evidence by calling the other party to the interview to testify about what had been said, and play a recording of the interview. Newbern, 95 Wn. App. at 282.

On appeal, the court reasoned that when a witness's prior statement is inconsistent with her testimony at trial, but the witness responds by saying that she does not remember making the statement, extrinsic evidence of the prior statement remains admissible for impeachment purposes. Newbern, 95 Wn. App. at 293-94. "This is because the purpose of using prior inconsistent testimony to impeach is to allow an adverse party to show that the witness tells different stories at different times." Newbern, 95 Wn. App. at 293. "Even if a witness cannot remember making a prior inconsistent statement, if the witness testifies at trial to an inconsistent story, the need for the jury to know that this witness may be unreliable remains compelling." Newbern, 95 Wn. App. at 293.

In this case, the trial court erroneously focused on the form of defense counsel's question, "do you remember saying" compared to "did you say," and held that the form of the question meant the only available evidence for impeachment went to P.C.'s ability

-9-

to remember the interview. Such a differentiation is unnecessary. Either way, defense counsel asked P.C. about the statements during cross-examination and afforded her the opportunity to confirm, deny, or explain those statements in accordance with ER 613(b). In response, she said she did not remember making the statements, and at one point went further saying she does not "do oxy." P.C. testifying that she did not remember the interview is the functional equivalent of a denial for the purposes of impeachment, and defense counsel should have been permitted to admit extrinsic evidence after P.C. left the stand to impeach her credibility regarding her inconsistent story. Because defense counsel followed the proper impeachment process, his actions were not deficient.

Forcha-Williams also contends that defense counsel's conduct was deficient because he failed to remedy the ruling by recalling P.C. so that he might question her in the way described by the trial court, then admit the extrinsic evidence. Forcha-Williams argues that this case is similar to Horton, as "there [was] no conceivable legitimate tactic explaining counsel's performance." Grier, 171 Wn.2d at 33; Horton, 116 Wn. App. at 916-17. We disagree.

Defense counsel's conduct did not fall "below an objective standard of reasonableness" because defense counsel could reasonably have determined that recalling P.C. was unnecessary. The jury was already aware of the evidence that P.C. had told a detective that she had consumed beer, OxyContin, and a blue pill on the morning of the incident. While P.C. testified that she did not remember making the statement, she also testified that she did not remember doing several other things that were uncontested facts, such as riding in an ambulance and being photographed by officers. Moreover, when defense counsel questioned Krusey about the interview,

Krusey was able to confirm that P.C. told him that she had consumed several beers before the prosecutor could object. That statement was not stricken from the record. "When an objection is sustained with no further motion to strike the testimony and no further instruction for the jury to disregard the testimony, the testimony remains in the record for the jury's consideration." State v. Stackhouse, 90 Wn. App. 344, 361, 957 P.2d 218 (1998).

Likewise, defense counsel's conduct can reasonably be characterized "as legitimate trial strategy or tactics" as the defense could have determined that recalling P.C. to the stand might have harmed the defense more than it would have helped. Kyllo, 166 Wn.2d at 863. Recalling P.C. would have allowed defense counsel the opportunity to again impeach her credibility, however, it would also give the State an opportunity to have P.C. explain why she may not remember the interview, which would likely encourage more highly prejudicial testimony about the severity of the attack and her injuries.

Forcha-Williams also cannot demonstrate that he was prejudiced by the entirety of this evidence not being admitted. As stated above, substantial evidence made it into the record and was available for the jury to consider. Evidence in the record had already fulfilled the purpose of demonstrating P.C.'s lack of memory and inconsistency in relaying the facts to detectives and at trial. The evidence was not available for any other purpose, such as to prove that P.C. had taken these intoxicants. Prior inconsistent statements are offered solely to show the witness is not truthful, such evidence may not be used to argue that the facts contained in the prior statement are

-11-

substantively true.[1] State v. Burke, 163 Wn.2d 204, 219, 181 P.3d 1 (2008).
Considering all of the evidence, Forcha-Williams has failed to demonstrate there is a reasonable probability that, had defense counsel found a way to admit the evidence in its entirety, the outcome of the proceedings would have been different.

III

Finally, Forcha-Wlliams asks that no costs be awarded on appeal. Appellate costs are generally awarded to the substantially prevailing party on review. However, when a trial court makes a finding of indigency, that finding remains throughout review "unless the commissioner or clerk determines by a preponderance of the evidence that the offender's financial circumstances have significantly improved since the last determination of indigency." RAP 14.2. Here, Forcha-Williams was found indigent by the trial court. If the State has evidence indicating that Forcha-Williams' financial circumstances have significantly improved since the trial court's finding, it may file a motion for costs with the commissioner.

We affirm.

_Mann, J._

WE CONCUR:

_Cox, J._

---

[1] Even if it could, the record also included urinalysis and blood testing that indicated that amphetamine, cocaine, and cannabis were present in P.C.'s system, but no other detectable substance was found, such as alcohol or oxycodone. This evidence explicitly refuted any statement by P.C. that she had consumed any of the intoxicants she listed to Detective Krusey.